IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CASE NO.: 1:17-cv-1678

MELIH TAN and PAMELA TAN,

      Plaintiffs,

v.

DET-CO, INC., *et al*.

      Defendants.

_____/

## DEFENDANTS' MOTION TO DISMISS OR, ALTERNATIVELY, FOR A MORE DEFINITE STATEMENT AND INCORPORATED MEMORANDUM OF LAW[1]

Defendants, DET-CO, INC. ("**Det-CO**"), RINO SUPPLY CO, INC. ("**Rino**"), GARY WEST, JARED PENMAN, FIREHOUSE ORGANICS CENTRAL, LLC ("**Firehouse Central**") and FIREHOUSE ORGANICS NORTH, LLC ("**Firehouse North**") (collectively, "**Defendants**"), through undersigned counsel, respectfully move to dismiss the Complaint [D.E. 1] pursuant to Fed. R. Civ. P. 12(b)(6) (failure to state a claim upon which relief can be granted) and 12(b)(7) (failure to join an indispensable and required party under Rule 19) or, alternatively, for a more definite statement pursuant to Fed. R. Civ. P. 12(e), and in support thereof, Defendants state as follows:

## MEMORANDUM OF LAW

### I.    BACKGROUND.

1.    The fatal deficiencies of the Complaint are evidenced by the fact that its nine claims are not supported by a single exhibit. Indeed, this sprawling twenty-page, nine-count

_____

[1] Pursuant to D.C. Colo. L. Civ. R. 7.1(b)(2), a duty to confer certificate under D.C. Colo. L. Civ. R. 7.1(a) is not required here because this Motion is being filed under Fed. R. Civ. P. 12.

Complaint based on an alleged "investment" by Plaintiffs in excess of $1.35 million lacks even a single exhibit.   The suggestion that one or more alleged sizeable transactions could not be corroborated by a single document defies belief and the legal requirements to maintain this lawsuit.

2.       As written, the Complaint requires several readings, which reveal that the Plaintiffs raise irrelevant transactions with non-parties (not the Defendants), and beyond that, Plaintiffs failed to present the facts (or documents) evidencing that they allegedly "advanced" money to the Defendants at a specific time or under any terms.  Even the alleged oral agreements lack details such as who was involved, precisely when, and what was said.

3.       From this convoluted premise, Plaintiffs allege claims, all of which are alternative to each other, against all Defendants for: declaratory judgment, breach of contract, breach of duty of good faith and fair dealing, promissory estoppel, unjust enrichment, breach of fiduciary duties of loyalty and care, aiding and abetting a breach of fiduciary duties, civil conspiracy, and conversion.

4.       To the extent it can be discerned, the essence of Plaintiffs' allegations is that they were deprived of (a) an interest in or ownership of Firehouse North, Firehouse Central, and Firehouse Organics South, LLC (the "**Firehouse Defendants**") and Rino, all of which are involved in the business of growth and sale of medical marijuana; and (b) ownership of real property referred to in the Complaint as the Isabelle Property, where the medical marijuana is cultivated.  Plaintiffs' ownership claims are not substantiated by a single document.

5.       In addition to fatal flaws in pleading their claims, Plaintiffs failed to include seven indispensable parties, at least one of which would destroy diversity jurisdiction if he were joined in this lawsuit.  Those indispensable parties are: Thomas Waldron Sr., Thomas Waldron Jr. (a

*Melih Tan, et al. v. Det-CO, Inc. et. al*
CASE NO.: 1:17-cv-1678

Florida citizen and resident, like the Plaintiffs)[2], Kim Gataeno, Star-Tek Holdings, LLC, Evren

Partners, LLC, New Alternatives Consulting, LLC, and Deep Blue Enterprises, LLC.

6.      On its face, the Complaint purports to allege that four seemingly distinct and

isolated transactions are related and have a common thread and purpose sufficient to provide a

foundation to this lawsuit.  However, the transactions have nothing in common, other than a

connection (albeit tenuous) to Plaintiffs' initial "advance," investment or loan to Kim Gataeno

and Thomas Waldron Sr.  Below, Defendants will try to set forth Plaintiffs' confused tangle of

transactions (again, as alleged, Plaintiffs do not state that money was "advanced" to Defendants

and, instead, appear to lend money to non-parties) with as much clarity as is practicable given the

fatal pleadings deficiencies of the Complaint.

### (A)      The First Transaction – The Failed Waldron/Gataeno Deal for an Interest in the Firehouse Defendants.

7.      According to Plaintiffs, the first transaction (the "**First Transaction**")

purportedly involves an "advance" by Plaintiffs to *someone* (it is unclear who received the funds,

but it appears, though not conclusively, to be a third party named Thomas Waldron Sr. or Kim

Gataeno) of $1,000,000 to purchase a fifty percent equity interest from Gataeno in, and

management control of, the Firehouse Defendants (which Gataeno owned and operated under

different names as well as ownership) pursuant to a written agreement that Plaintiffs refer to as

the "Original Purchase Agreement," but which Plaintiffs fail to attach to the Complaint.  *See* the

Complaint at ¶¶ 15-18.  Plaintiffs admit that neither they nor the Defendants were parties to the

Original Purchase Agreement, which was a written agreement between non-parties Waldron Sr.

and Gataeno.  *Id*. at ¶ 15.  Finally, it is unclear why this transaction between non-parties is

---

[2] In a lawsuit styled *Thomas S. Waldron Jr., et al. v. Gary West, et al.*, filed by Waldron Jr. in the 20th Judicial District Court for Boulder County, Colorado, Case No. 2017-cv-30738, Waldron Jr. admits at Paragraph 1, that he is a citizen and resident of the State of Florida, like the Plaintiffs.

relevant. The only persons Plaintiffs identify as having received the funds are Gataeno's attorney, who was allegedly holding Plaintiffs' $1,000,000 "in escrow" for some unidentified reason (*Id*. at ¶ 18) and Gataeno, who purportedly "broke escrow" and used $725,000 of those funds to buy some unidentified real property in the name of Star-Tek Holdings, LLC ("**Star-Tek**") (*Id*. at ¶ 39). According to Plaintiffs' allegations, Defendants are uninvolved.

8.      According to Plaintiffs, Gataeno declared the Original Purchase Agreement null and void and the transaction was not finalized. *Id*. at ¶ 21. The First Transaction concludes at this juncture, with no written agreements or written proof of the First Transaction provided by Plaintiffs as exhibits, nor any reference to the Defendants.

### (B)      The Second Transaction – the NAC/Deep Blue Deal for Development, Maintenance and Rental of the Isabelle Property.

9.      Plaintiffs also allege that a second transaction (the "**Second Transaction**") took place involving Plaintiffs "directly **or indirectly** through their family's entity, Evren Partners, LLC [("**Evren**")]." (emphasis added). Evren is not a party to this action and appears to be the entity that provided the funds in the Second Transaction in excess of $350,000. It is unclear who received the funds; but it may be two entities called New Alternatives Consulting, LLC ("**NAC**") and Deep Blue Enterprises, LLC ("**Deep Blue**"). *Id*. at ¶ 25-31. Accordingly to the Complaint, Evren (not the Plaintiffs) "advanced" in excess of $350,000 to NAC and Deep Blue to pay the rent and expenses of building and maintaining a facility on the Isabelle Property "with an eye towards developing the site and then buying it." *Id*. at ¶ 29. There is not a single written agreement referenced or attached to the Complaint evidencing the Second Transaction, which purportedly involved Waldron Sr., Waldron Jr., NAC, Deep Blue (but somehow, none are parties to this action) and West, Penman, and Rino. The Second Transaction concludes at this juncture.

**(C)** **The Third Transaction – the Gaetano/Det-CO Deal for an Interest in the Firehouse Defendants and Star-Tek.**

10.     Furthermore, Plaintiffs allege that a third transaction (the "**Third Transaction**") took place involving the sale of stock and membership interest from Gataeno to Det-CO in the Firehouse Defendants and Star-Tek.  *Id*. at ¶ 39.   The Third Transaction was apparently memorialized in the January Purchase Agreement, as amended (the "**Amended Purchase Agreement**"), as those terms are used by Plaintiffs.   Although Plaintiffs purport to quote at length from said agreement, they failed to attach it to the Complaint as an exhibit.   Moreover, Plaintiffs are not a party to that contract.

11.     Plaintiffs do not state in the Complaint that they contributed any funds for Det-CO to purchase the stock and membership interest from Gataeno as to the Firehouse Defendants and Star Tek.   Instead, and in improper conclusory fashion, Plaintiffs obfuscate the facts and engineer their participation in the Third Transaction by alleging that they "had advanced over one million dollars [to some unidentified person or persons] to lock up the Original Purchase Agreement [which happened in the separate and failed First Transaction], which in turn made the Amended Purchase Agreement [which dealt with the distinct Third Transaction] transaction possible." *Id*. at ¶ 46.   This is specious and lacks any statement of fact that might create any semblance of correlation, much less causation.

12.     As with the previous transactions, there is not a single written agreement referenced or attached to the Complaint evidencing the Third Transaction, which purportedly involved Waldron Sr., Waldron Jr., Gataeno, Star-Tek, Pro-Tek (another unidentified entity), Thomas Murphy (but somehow, again, none of them are parties to this action) and Det-CO, the Firehouse Defendants, West and Penman.   The Third Transaction concludes at this juncture.   But this deal, too, was not completed.

    **(D)**     **The Fourth Transaction – TCG Assets' Purchase of the Isabelle Property.**

13.     Lastly, and although Plaintiffs fail to provide a full narrative of the facts, it appears that, at some point, Deep Blue was supposed to purchase the Isabelle Property, although Plaintiffs fail to state whether a written contract for the sale was in place. *Id*. at ¶ 49. Deep Blue was supposed to purchase the Isabelle Property with funds Deep Blue secured from "lender commitments . . . from seven individuals and entities," which Plaintiffs fail to identify, but Plaintiffs were not the lenders. *Id*. For some unidentified reason, Deep Blue did not purchase the Isabelle Property. *Id*. at ¶ 51. Plaintiffs do not state who ultimately purchased the Isabelle Property, but they suggest it was a third party called TCG Assets, Inc., which purportedly then sold it to Rino. *Id*. at ¶ 51-53.

14.     Plaintiffs allege that they should share in the ownership and profits of the Firehouse Entities and Star-Tek, as well as the Isabelle Property, merely because they purportedly gave (a) $1,000,000 to Gataeno (and not the Defendants) in the First Transaction, which Gataeno appears to have spent and (b) non-party Evren (not the Plaintiffs) supposedly "advanced" $350,000 to NAC and Deep Blue in the Second Transaction (and not to the Defendants), which appear to have allegedly have been spent by them in the business.

15.     None of the actual persons or entities who, according to Plaintiffs, received and spent their funds are named as parties to this action. There is not a single written agreement attached to the Complaint or referenced by Plaintiffs that evidences their role in these transactions. It is impossible to make sense, or respond to, Plaintiffs' story, which lacks specific dates, locations, persons present, amounts, terms, or even a cogent recitation of facts to show any money flowing from Plaintiffs directly to Defendants.

16.    The Complaint should be dismissed in its totality because, as evidenced by Plaintiffs' disjointed and confusing narrative, Plaintiffs have failed to plead a single legally sustainable claim and because Plaintiffs failed to join indispensable parties.   In the alternative, Defendants respectfully request that Plaintiffs provide a more definite statement as to the transactions alleged in the Complaint.

## II.    **LEGAL ARGUMENT.**

### (A)    **Plaintiffs Failed to State any Claim Upon Which Relief can be Granted Under Rule 12(b)(6).**

17.    Pursuant to Fed. R. Civ. P. 12(b)(6), the Court should dismiss the Complaint because it does not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Wasatch Equality v. Alta Ski Lifts Co.*, 820 F. 3d 381, 386 (10th Cir. 2016) (dismissing the complaint under Rule 12(b)(6), and quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678, (2009)).   In reviewing the Complaint for legal sufficiency, the Court must not "accept the nonmoving party's legal conclusions as true" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* These pleading requirements have two (2) purposes, "'to ensure that a defendant is placed on notice of his or her alleged misconduct sufficient to prepare an appropriate defense,' and 'to avoid ginning up the costly machinery associated with our civil discovery regime on the basis of 'a largely groundless claim.'" *Kansas Penn Gaming, LLC v. Collins*, 656 F. 3d 1210, 1215 (10th Cir. 2011) (dismissing complaint under Rule 12(b)(6)).   This Court should dismiss the Complaint because Plaintiffs have failed to plead a single legally sufficient claim.   All of Plaintiffs' claims are based on nothing but conclusory statements and threadbare assumptions unsupported by a single document that could lend any credence to Plaintiffs' allegations.   As pleaded, it is

impossible for Defendants to defend themselves against Plaintiffs' confusing, and often contradictory, allegations.

**(i)      The Alleged  Transactions at Issue are Void and Unenforceable as Against Public Policy.**

18.      As a preliminary matter, and assuming that one or several contracts were executed by the parties conveying an interest in the Firehouse Defendants, Rino, and the Isabelle Property, contracts of this nature (dealing with the sale of medical marijuana) are void and unenforceable as against public policy because they violate federal law.  "Where a contract is illegal, neither law nor equity will aid either to enforce, revoke, or rescind."  *Haeberle v. Lowden*, 2012 WL 7149098, *2 (Colo. 2012) (the court dismissed claim for breach of contract for the sale of marijuana, finding that such contracts are void as against public policy because they violate federal law prohibiting the cultivation and sale of marijuana.  The court expressly stated that "**contracts for the sale of marijuana are void as they are against public policy.**") (emphasis added).  Accordingly, Plaintiffs' breach of contract claim, as well as any claim that depends on the existence of an enforceable contract bestowing rights and benefits on Plaintiffs as a predicate (*i.e.* the claims for declaratory judgment, breach of duties of good faith and fair dealing, aiding and abetting a breach of fiduciary duties, breach of duty of care and loyalty, civil conspiracy to breach fiduciary duties, and conversion) should be dismissed as legally unsustainable in this Court.

**(ii)      Plaintiffs Failed to State a Claim for Breach of Contract.**

19.      Plaintiffs alleged a claim for breach of contract against Defendants, even though there is not single written agreement attached to the Complaint, and Plaintiffs do not reference a single agreement for the transfer of ownership in the Firehouse Entities, Star-Tek and the Isabelle Property in which they participated or which materialized.   Under Colorado law, the

prima facie elements of a claim for breach of contract are "(1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff." *Registry Sys. Intern., Ltd. v. Hamm*, 2010 WL 326327, *4 (D. Colo. 2010). Plaintiffs failed to plead any of the required elements for a claim of breach of contract.

20.    With respect to the ownership of the Firehouse Entities and Star-Tek, Plaintiffs only pleaded that in the First Transaction they had an agreement with Waldron Sr., Waldron Jr. and Gataeno (who are not parties to this action) for the sale of an interest in the Firehouse Defendants. However, instead of filing suit against them, Plaintiffs filed suit against the Defendants. The First Transaction failed, but Defendants did not play any role in it. In fact, it is unclear whether the "agreements" at issue are verbal or written agreements, or under what theory Plaintiffs are proceeding. The Firehouse Entities and Star-Tek were ultimately purchased by Det-CO from Gataeno in the Third Transaction, where Plaintiffs played no role and did not contribute funds. The only connection that Plaintiffs have to this transaction is that they allegedly had an agreement (verbal or otherwise) to purchase an interest in the entities years before, which never materialized.

21.    In the same vein, and with respect to the Isabelle Property, Plaintiffs only plead that, in the Second Transaction, Evren (not the Plaintiffs), "advanced" certain funds to NAC and Deep Blue to develop the Isabelle Property "with an eye towards developing the site and then buying it." Complaint at ¶ 29. This does not constitute an agreement for the conveyance of an interest in real property because it runs afoul of Colorado's Statute of Frauds. C.R.S. 38-10-108 ("Every contract for the leasing for a longer period than one year or for the sale of any lands or any interest in lands is void unless the contract or some note or memorandum thereof expressing

*Melih Tan, et al. v. Det-CO, Inc. et. al*
CASE NO.: 1:17-cv-1678

the consideration is in writing and subscribed by the party by whom the lease or sale is to be made."). These allegations are similarly insufficient to maintain a breach of contract claims for sale and purchase of the Isabelle Property.

22. Moreover, even if Plaintiffs pleaded that they contracted with Defendants (which is **not** pleaded) in the First Transaction (dated October-December 2010), Second Transaction (dated April-May 2012), or Third Transaction (dated January to May 30, 2014), a breach of contract claim as to these transactions is barred by Colorado's Statute of Limitations, which has a three-year limit on such claims. C.R.S. 13-80-101(1)(a) (Plaintiffs filed this suit on July 10, 2017).

23. Accordingly, Plaintiffs failed to properly plead a breach of contract claim against Defendants, and this claim should be dismissed.

### (iii) <u>Plaintiffs Failed to State a Claim for Breach of Duties of Good Faith and Fair Dealing.</u>

24. Plaintiffs' claim for breach of the duties of good faith and fair dealing should be dismissed because it is based on nothing more than a conclusory statement that Defendants breached these purported duties. "The implied covenant of good faith and fair dealing provides that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive **the fruits of the contract**, which means that in every contract there exists an implied covenant of good faith and fair dealing." *Woods v. Nat'l Medical Care, Inc.*, 2001 WL 1573574, *772 (10th Cir. 2001) (granting summary judgment in favor of defendant employer and against plaintiffs employees where the employees claimed the employer had promised them certain bonuses) (emphasis added). However, as stated in Section II(A)(i) above, since Plaintiffs failed to properly plead a breach of contract claim against Defendants, Plaintiffs

cannot thus sustain a breach of the duties of good faith and fair dealing arising from such contracts.  Accordingly, this claim should also be dismissed.

### (iv) **Plaintiffs Failed to State a Claim for Promissory Estoppel.**

25.     As an alternative claim for an implied contract, Plaintiffs rely on a theory of promissory estoppel.  "The theory of promissory estoppel ... permits recovery if (1) a promisor makes a promise which he should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee, (2) the promise does induce such action or forbearance, and (3) injustice can be avoided only by enforcement of the promise." *Id*. In order to prevail, Plaintiffs must show that they "have **reasonably** relied on the alleged promise to its detriment." *Id*. (emphasis added).  This alternative claim similarly cannot survive because Plaintiffs failed to identify a single agreement or promise by Defendants on which they "reasonably" relied to their detriment.  With respect to the transaction for an interest in the Firehouse Defendants, Plaintiffs had purportedly reached an agreement that never materialized with non-parties Waldron Sr., Waldron Jr. and Gataeno in the First Transaction, not with any of the Defendants.  Moreover, with respect to the Isabelle Property, Plaintiffs merely hoped that NAC and Deep Blue would purchase the property.  Plaintiffs did not even contribute any funds to NAC and Deep Blue; it was non-party Evren which purportedly contributed in excess of $350,000 to them.  Accordingly, this claim should also be dismissed.

### (v) **Plaintiffs Failed to State a Claim for Breach of Fiduciary Duties of Care and Loyalty.**

26.     In the same manner, Plaintiffs allege that Defendants breached the fiduciary duties of care and loyalty toward them, even though there was no fiduciary relationship between them.  In Colorado, "[i]ndependent legal duties of care owed by a fiduciary include a duty to act with utmost loyalty on behalf of, and for the benefit of, the other party." *Walshe v. Zabors*, 178

F. Supp. 3d 1071, 1083 (D. Colo. 2016) (granting summary judgment in defendant's favor for breach of fiduciary duty claim where the court determined that no such fiduciary relationship existed). Such duties arise when "[a] fiduciary relation exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation." *Id*. However, "[f]iduciary relationships that derive from a special relationship of trust, reliance, influence, and control **are distinguishable from business relationships involving parties dealing at arm's length for mutual benefits**." *Id.* (citing *Devery Implement Co. v. J.I. Case Co.*, 944 F.2d 724, 730 (10th Cir.1991) ("**[P]arties may deal at arms length for mutual profit without subjecting themselves to heightened fiduciary duties**.") (emphasis added) and 37 C.J.S. Fraud § 11 (2008) ("**Most business relationships or contractual relationships...do not by themselves create fiduciary obligations, and fiduciary obligations should be extended reluctantly to commercial or business transactions**.") (emphasis added)). As explained above, the parties who made any type of promise to Plaintiffs that was ultimately disavowed were Waldron Sr. and Gataeno, but Plaintiffs somehow chose not to file suit against them here. Even if a business relationship existed between the Plaintiffs and the Defendants, *Walshe* and *Devery* state that such business relationships are arm's length relationships that do not create fiduciary duties.

27.     Moreover, regardless of whether the alleged fiduciary relationship was created in the First Transaction (dated October-December 2010), Second Transaction (dated April-May 2012), or Third Transaction (dated January to May 30, 2014), a claim for breach of those duties as to these transactions is barred by Colorado's Statute of Limitations, which has a three-year limit of such claims. C.R.S. 13-80-101(1)(f), and Plaintiffs filed this suit on July 10, 2017. Accordingly, this claim should also be dismissed.

**(vi)** **Plaintiffs Failed to State a Claim for Unjust Enrichment.**

28.     As another alternative claim based on an implied contract theory, Plaintiffs alleged a claim for unjust enrichment against Defendants.  "In Colorado, the elements of unjust enrichment are: "(1) at the expense of a plaintiff; (2) a defendant received a benefit; (3) under circumstances making it unjust for the defendant to retain the benefit without paying for it." *Johnson v. American Honda Motor Co. Inc.*, 2016 WL 3078995, *5 (D. Colo. 2016) (dismissing claim for unjust enrichment with prejudice).  Here, Defendants did not receive any benefit from Plaintiffs.

29.     At issue in this lawsuit is an "advance" of $1,000,000 that Plaintiffs purportedly made to Gataeno that Gataeno spent, in part purchasing a property owned by Star-Tek.  However, Plaintiffs failed to file suit against Gataeno or Star-Tek, the actual persons who received a benefit from the $1,000,000.

30.     Moreover, it was non-party Evren who "advanced" in excess of $350,000 to NAC and Deep Blue as part of the Second Transaction, not the Plaintiffs.  Evren, even if it were controlled by Plaintiffs, is a distinct and separate person with its own identity and Plaintiffs cannot usurp Evren's claims as its own, and thus lack standing to bring it.  *In re Calderon*, 501 B.R. 726, 735 (D. Colo. 2013) (recognizing that it is a fundamental principle of corporate law that LLCs have a separate, legal distinct and independent identity from their legal owners); *see also* C.R.S. 7-80-104(1)(a) (stating that LLCs have the capacity to sue and be sued).  Since Plaintiffs did not bestow the benefit of the $350,000 on NAC and Deep Blue (allegedly, it was Evren), they have no claim for unjust enrichment based on those funds and thus lack standing to bring the claim.  Accordingly, this claim should also be dismissed.

*Melih Tan, et al. v. Det-CO, Inc. et. al*
CASE NO.: 1:17-cv-1678

**(vii)**   **Plaintiffs Failed to State a Claim for Aiding & Abetting Breach of Fiduciary Duties.**

31.    Plaintiffs also allege a claim of aiding and abetting a breach of fiduciary duties against Defendants, the elements of which are as follow: "(1) breach of a fiduciary duty owed to a plaintiff, (2) a defendant's knowing participation in the breach, and (3) damages resulting from the breach." *Franco v. Nealy*, 2015 WL 4467436, *1 (D. Colo. 2015) (granting summary judgment in defendants' favor as to claim of aiding and abetting breach of fiduciary duty claim and dismissing defendants from action).    Additionally, although "[t]here does not need to be an agreement among the defendants to commit the breach, the plaintiff must establish that the defendant alleged to have aided and abetted the breach provided substantial assistance to the party directly breaching his fiduciary duty." *Id.*   As stated above, Plaintiffs failed to properly allege or provide sufficient facts to maintain a claim for breach of any fiduciary duties against Defendants.   Moreover, Plaintiffs failed to provide sufficient facts indicating that, even if such breaches occurred, that the breach was perpetrated knowingly.    Plaintiffs merely state, in conclusory fashion, that Defendants "knowingly participated and substantially assisted in those breaches." Complaint at ¶ 94.   These allegations are insufficient as a matter of law, and as such the claim should be dismissed.

**(viii)**   **Plaintiffs Failed to State a Claim for Civil Conspiracy.**

32.    Plaintiffs' two claims for civil conspiracy against Defendants are based on the conclusory allegations that Defendants conspired to somehow assist each other in breaching their fiduciary duties to Plaintiffs, and to usurp and convert the Firehouse Defendants, Rino, and the Isabelle Property.   Under Colorado law, the elements of civil conspiracy are as follow: "'(1) two or more persons (2) with an object to be accomplished (3) had a meeting of the minds on the object or a course of action (4) and took one or more overt acts (5) resulting in damages to the

victim.'"  *Christou v. Beatport, LLC*, 2013 WL 248058, *12 (D. Colo. 2013) (denying summary

judgment on civil conspiracy claim).  Plaintiffs cannot maintain their claim because, as stated

above, Defendants did not, and do not now, owe any fiduciary duties to Plaintiffs.  Moreover,

Plaintiffs failed to plead any facts sufficient to maintain their claim.  Plaintiffs merely state in

conclusory fashion that all Defendants conspired with each other, without providing more or

even stating the when, what, how or why of the conspiracy and its scope.  Plaintiffs fail to even

state what the object of the conspiracy was, and merely provide the purported outcome from

Plaintiffs' point of view.  Even more egregious, Plaintiffs do not even allege whether the

Defendants had a meeting of the minds, what that "meeting of the minds entailed," or what overt

acts were taken in furtherance of the conspiracy.  Accordingly, this claim should also be

dismissed.

      **(ix)**      <u>**Plaintiffs Failed to State a Claim for Conversion and/or Civil Theft.**</u>

      33.      Plaintiffs also allege that Defendants converted "the equity" of the Firehouse

Defendants, Rino and the Isabelle Property and prevented Plaintiffs from using the equity and

property.  Under Colorado law, the elements of a claim for conversion are "'actual dominion

over the property of another, a demand by the owner for return of the property, and refusal of the

demand by the other party.'"  *Builder MT LLC v. Zybertech Const. Software Servs., Ltd.*,

(D.Colo. 2008) (dismissing claim for conversion).  The conversion claim fails because the

Isabelle Property did not, nor does it now, belong Plaintiffs.   Under Colorado's Statute of

Frauds, a contract for the sale, purchase or transfer of an interest in real property must be in

writing.  C.R.S. 38-10-108 ("Every contract for the leasing for a longer period than one year or

for the sale of any lands **or any interest in lands is void unless the contract** or some note or

memorandum thereof expressing the consideration i**s in writing and subscribed by the party**

**by whom the lease or sale is to be made.**") (emphasis added).  Because there is no such written contract bestowing an interest in the Isabelle Property on Plaintiffs, the Isabelle Property could not be converted if it never belonged to Plaintiffs in the first place.

34.     Furthermore, as stated above, it is unclear from the allegations in the Complaint whether Plaintiffs in fact owned any interest in the Firehouse Defendants (as members) and Rino (as shareholders).  Since Plaintiffs must first establish that the "property" converted (in this case an interest in the Firehouse Defendants and Rino) actually belonged to them at the time of the alleged conversion to maintain a claim for conversion, and Plaintiffs have failed to do so, the claim should be dismissed.

35.     Moreover, regardless of whether the alleged conversion occurred at the time of the First Transaction (dated October-December 2010), Second Transaction (dated April-May 2012), or Third Transaction (dated January to May 30, 2014), a claim for conversion as to these transactions is barred by Colorado's Statute of Limitations, which has a three-year limit of such claims.  C.R.S. 13-80-101(1)(h), and Plaintiffs filed this suit on July 10, 2017.

36.     With respect to the civil theft claim under C.R.S. 18-4-405, the claim also fails because Plaintiffs did not plead that the property at issue "was taken with the specific intent to permanently deprive the owner of the benefit of the property," which is a necessary element under Colorado's civil theft statute.  *Procom Supply, LLC v. Langner*, 2012 WL 4856724, *5 (D. Colo. 2012) (dismissing claims for civil theft).  As such, both claims for conversion and civil theft should be dismissed.

## (x)     Plaintiffs Failed to State a Claim for Declaratory Judgment.

37.     Plaintiffs seek a declaratory judgment as to their ownership interest in Det-CO, the Firehouse Defendants, Rino and the Isabelle Property.  Plaintiffs' claim fails as a matter of

law and should be dismissed because Plaintiffs failed to identify an actual, present and justiciable controversy between the parties within the meaning of 28 U.S.C. § 2201(a), which states as follows:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a).  Should this Court dismiss all of Plaintiffs' other, substantive claims, the claim for declaratory relief that is wholly dependent on those claims should also be dismissed because it would no longer be viable. *Long v. Wells Fargo Bank, N.A.*, 670 Fed. Appx. 670, 671 (10th Cir. 2016) (dismissing affirming the district court's dismissal of plaintiff's request for declaratory relief because since plaintiff's "substantive claims ha[d] failed, his request for declaratory relief in relation to those claims is not viable.").   Accordingly, this claim should likewise be dismissed.

### (B)   The Complaint Should be Dismissed Because Plaintiffs Failed to Join Indispensable Parties Under Rules 12(b)(7) and 19.

38.   The Complaint should be dismissed under Fed. R. Civ. P. 12(b)(7) and 19(a)(1) due to Plaintiffs' failure to join the following indispensable and required parties: Waldron Sr., Waldron Jr. Gataeno, Star-Tek, Evren, NAC, and Deep Blue (the "**Indispensable Parties**"). Fed. R. Civ. P. 19 provides a two-part test for determining whether a party is indispensable: (a) "[f]irst, Rule 19(a) is applied to determine whether the absent party is conditionally necessary and therefore to be joined if feasible," and (b) "[s]econd, if joinder of that party would destroy diversity jurisdiction, Rule 19(b) is invoked to determine whether, in equity and good conscience, the action should be dismissed because that party is indispensable." *City of Littleton, Colo. v. Commercial Union Assur. Cos.*, 133 F.R.D. 159, 162 (D. Colo. 1990) (dismissing

lawsuit because the court determined that the persons at issue were indispensable parties, but if

joined they would destroyed diversity).

### (i)      The Indispensable Parties.

39.      All of the Indispensable Parties are indispensable and required parties to this

action pursuant to Fed. R. Civ. P. 19(a)(1), which states as follows:

> A person who is subject to service of process and whose joinder will not deprive
> the court of subject-matter jurisdiction must be joined as a party if:
> (A)      in that person's absence, the court cannot accord complete relief
>          among existing parties; or
> (B)      that person claims an interest relating to the subject of the action
>          and is so situated that disposing of the action in the person's
>          absence may:
>          (i)      as a practical matter impair or impede the person's ability
>                   to protect the interest; or
>          (ii)     leave an existing party subject to a substantial risk of
>                   incurring double, multiple, or otherwise inconsistent
>                   obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).  With respect to ownership of an interest in the Firehouse Defendants

and Star-Tek, the following are indispensable and required parties: Waldron Sr., Waldron Jr.,

Gataeno and Star-Tek.  It is evident from the Complaint that Waldron Sr. and Gataeno were the

actual persons who made misrepresentations and promises to Plaintiffs that could not be fulfilled

regarding the sale of a certain interest in the Firehouse Defendants.  In fact, Plaintiffs state that it

was Gataeno who promised them an interest in the entities, took Plaintiffs' $1,000,000 and spent

it (in part buying property that Gataeno purchased in Star-Tek's name).  Moreover, Waldron Jr.

was also a key figure, either as a co-investor or co-lender and active party in all of the

transactions.  It is baffling that none of these parties were included as defendants in this lawsuit,

when Plaintiffs' more grievous allegations are against them.

40.      Furthermore, with respect to the Isabelle Property, the actual party which

contributed any funds related (admittedly, it is a tenuous connection) to the sale of the Isabelle

*Melih Tan, et al. v. Det-CO, Inc. et. al*
CASE NO.: 1:17-cv-1678

Property is Evren, which advanced in excess of $350,000 to NAC and Deep Blue to develop the property in the "hope" of one day buying it.  As such, any claim for an interest in the Isabelle Property belongs to Evren, not to Plaintiffs.  Additionally, as the actual parties who received these funds, NAC and Deep Blue must be joined in the lawsuit as indispensable parties.

41.    Without these individuals and entities joined in the lawsuit, none of the claims can be properly adjudicated because these individuals and entities played key roles in the transactions at issue.  If this lawsuit is adjudicated without them, who are the actual breaching parties and/or tortfeasors (according to Plaintiffs own words in the Complaint), and if judgment were somehow entered against Defendants, these Indispensable Parties would not share in the liability, as they rightfully should.  Moreover, these parties may claim an interest in the Firehouse Defendants, Star-Tek or the Isabelle Property, or in the proceeds of the sale of these entities and property, which will be affected if the Court finds that they were guilty of some wrongdoing.  Given the fact that the primary focus of the Complaint is on them, it is inevitable that the Court will have to make findings of facts and reach legal conclusions that will affect these parties without giving them the benefit of defending themselves.   Accordingly, Waldron Sr., Waldron Jr. Gataeno, Star-Tek, Evren, NAC, and Deep Blue are indispensable and required parties to this action, and must be joined as such.

**(ii)    The Case Should be Dismissed Because Joining Certain Indispensable Parties Would Destroy Diversity.**

42.    Because the Indispensable Parties are indispensable and required parties to this lawsuit, and the presence of one or more of them in this action will destroy diversity, the Court must conduct a Rule 19(a)(2) analysis.  Fed. R. Civ. P. 19(b) states as follows:

If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should

proceed among the existing parties or should be dismissed. The factors for the court to consider include:

 (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

 (2) the extent to which any prejudice could be lessened or avoided by:

  (A) protective provisions in the judgment;

  (B) shaping the relief; or

  (C) other measures;

 (3) whether a judgment rendered in the person's absence would be adequate; and

 (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b). Although the citizenship of all the Indispensable Parties is unknown at this time, Defendants are aware that Waldron Jr. is a citizen and resident of Florida, which would destroy diversity because Plaintiffs are also citizens of Florida. Complaint at ¶¶ 4-5.

43. As stated above, given that the primary focus of the Complaint is on the Indispensable Parties, they should be joined in this lawsuit. The Court should not proceed with this action in their absence because, with respect to Waldron Sr., Waldron Jr. Gataeno, Star-Tek, NAC, and Deep Blue, they were the breaching parties and/or tortfeasors in each and every claim alleged here. They were key players in every promise made to Plaintiffs and subsequently broken. As such, any adjudication of the merits will involve the Court making findings as to their malfeasance, which would prejudice them because they would not be present to defend themselves. This prejudice cannot be avoided under the provisions of Rule 19(b)(2) because there is simply no protection against being found liable for any of the claims alleged without being given an opportunity to present a defense. Moreover, any judgment entered in their absence would be inadequate because if the Court rules in favor of Plaintiffs, Defendants would be burdened with greater liabilities and obligations than they should, since Waldron Sr., Waldron Jr. Gataeno, Star-Tek, NAC, and Deep Blue were the primacy actors, and not Defendants.

*Melih Tan, et al. v. Det-CO, Inc. et. al*
CASE NO.: 1:17-cv-1678

44.    Additionally, and with respect to Evren only, the claims related to the sale and purchase of the Isabelle Property belong solely to it, and not to Plaintiffs.  It was Evren which actually advanced the $350,000 to NAC and Deep Blue.  Plaintiffs have no ability or standing to bring any claims as to the Isabelle Property, because Evren has its own separate and distinct identity (even if controlled by Plaintiffs) and the claims related to the Isabelle Property belong to it alone.  As such, Evren should also be joined as indispensable.

45.    Moreover, Plaintiffs have an adequate remedy if the action were dismissed for nonjoinder of the Indispensable Parties, because the Plaintiffs may re-file the action in state court.

WHEREFORE, Defendants, DET-CO, INC., RINO SUPPLY CO, INC., GARY WEST, JARED PENMAN, FIREHOUSE ORGANICS CENTRAL, LLC and FIREHOUSE ORGANICS NORTH, LLC respectfully request that the Complaint be dismissed in its totality.

Dated:  August 18, 2017.

Respectfully submitted,

**MCDONALD HOPKINS, LLC**
*Attorneys for Defendants, Det-CO, Inc., Rino Supply Co, Inc., Gary West, Jared Penman, Firehouse Organics Central, LLC and Firehouse Organics North, LLC*


*/s/  Christopher B. Hopkins*
Christopher B. Hopkins, Esq.
Florida Bar No. 116122
Email: chopkins@mcdonaldhopkins.com
505 S. Flagler Drive, Suite 300
West Palm Beach, FL  33401
Tel: (561) 472-2121
Fax: (561) 472-2122

*Melih Tan, et al. v. Det-CO, Inc. et. al*
CASE NO.: 1:17-cv-1678

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by

CM/ECF this **18th day of August, 2017** to all those identified in the attached Service List.

/s/ *Christopher B. Hopkins*
Christopher B. Hopkins

## SERVICE LIST

Francis B. Majorie
The Majorie Firm Ltd.
4901 LBJ Freeway, Fourth Floor
Dallas, TX 75244
Tel. (214) 306-8107
Email: fbmajorie@themajoriefirm.com
*Attorneys for Plaintiffs Melih Tan and Pamela Tan*